UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
RONALD C. FOSTER,                   )
                                    )
            Plaintiff,              )
      v.                            )     Civil Action No. 14-0306 (JDB)
                                    )
CAROLYN W. COLVIN,                  )
                                    )
            Defendant.              )
_____)

**MEMORANDUM OPINION**

Plaintiff brings this action under section 205(g) of the Social Security Act, *see* 42 U.S.C. § 405(g), for review of the denial of his application for supplemental security income benefits. This matter is before the Court on plaintiff's Motion for Judgment of Reversal [ECF No. 23] and defendant's Motion for Judgment of Affirmance [ECF No. 24]. For the reasons discussed below, the Court will deny the former and grant the latter.

I. BACKGROUND

Plaintiff applied for supplemental security income benefits ("SSI") on the basis of a disability beginning on April 4, 2011.[1] Administrative Record ("A.R.") 10. The application was denied on June 6, 2011, *see* A.R. 68-75, and plaintiff's request for reconsideration was later denied as well, *see* A.R. 78-85. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), *see* A.R. 102-04, and the hearing took place on October 3, 2012, *see* A.R. 23-52, 114-18. After the hearing and "careful consideration of all the evidence," the ALJ determined

---

[1]     Plaintiff initially alleged disability beginning October 16, 2006, when he sustained a gunshot wound to his left leg. *See* A.R. 10, 68. He later amended the onset date to April 4, 2011, A.R. 159, the earliest date from which he could have been awarded benefits, *see* A.R. 27-28.

that plaintiff "is under a disability, but that a substance use disorder is a contributing factor material to the determination of disability." A.R. 11.  For this reason, the ALJ found that plaintiff was not "disabled under the Social Security Act at any time from the date the application was filed through the date of [his] decision." *Id*.  The Appeals Council denied plaintiff's request for review of the ALJ's decision, *see* A.R. 1-3, and the ALJ's decision therefore became the final decision of the Commissioner of Social Security ("SSA"), A.R. 1.

## II.  DISCUSSION

The Court's review of the SSA's final decision "is statutorily confined to determining whether the . . . decision . . . is supported by substantial evidence in the record." *Brown v. Bowen*, 794 F.2d 703, 705 (D.C. Cir. 1986); *see* 42 U.S.C. § 405(g).  Substantial evidence is "more than a mere scintilla [and] means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted).  "Substantial-evidence review is highly deferential to the agency fact-finder," *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008), and the Court will uphold the SSA's determination as long as "it is based on substantial evidence in the record and correctly applies the relevant legal standards," *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004) (citations omitted).

An individual is disabled for SSI purposes "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  An individual is "determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only

unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id*. § 1382c(a)(3)(B). The individual must prove that he is disabled by providing medical and other evidence that the SSA can use to reach conclusions about his alleged impairments. *See* 20 C.F.R. § 416.912(a). Evidence may include medical reports, laboratory test results, and the claimant's own statements about his impairments. *See id*. §§ 416.912(b), 416.913. If an individual's "drug addiction would . . . be a contributing factor material to the [SSA's] determination that the individual is disabled," the individual "shall not be considered to be disabled" for purposes of SSI. 42 U.S.C. § 1382c(a)(3)(J).

The SSA employs a "sequential evaluation process . . of five 'steps,'" 20 C.F.R. § 416.920(a)(4), to determine whether an adult claimant who has applied for SSI is disabled, *id*. § 416.920(a)(2). The Court, which is authorized "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [SSA], with or without remanding the cause for a rehearing," 42 U.S.C. § 405(g), reviews the ALJ's determination that plaintiff is not disabled. "The findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive[.]" *Id*.

### A. Step One

At Step One, the SSA considers the claimant's work activity. *See* 20 C.F.R. § 416.920(a)(4)(i). A claimant who is working and whose work is substantial gainful activity is "not disabled regardless of [his] medical condition, . . . age, education, and work experience." *Id*. § 416.920(b); *see id*. § 416.920(a)(4)(i). "Substantial work activity . . . involves doing

significant physical or mental activities." *Id*. § 416.972(a). "Gainful work activity is work activity that [a claimant does] for pay or profit," and "[w]ork activity is gainful if it is the kind of work activity usually done for pay or profit, whether or not profit is realized." *Id*. § 416.972(b).

The ALJ found that plaintiff had not engaged in substantial gainful work activity since his application date, April 4, 2011. A.R. 12; *see* A.R. 26, 28.

### B.  Step Two

At Step Two, the SSA considers the medical severity of a claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii). A claimant without an "impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities . . . do[es] not have a severe impairment and [is], therefore, not disabled," regardless of the claimant's age, education, and work experience. *Id*. § 416.920(c); *see id*. § 416.920(a)(4)(ii). An impairment is severe if "it . . . significantly limit[s a claimant's] physical or mental ability to do basic work activities," *id*. § 416.921(a), such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," *id*. § 416.921(b)(1), or seeing, *id*. § 416.921(b)(2).

#### 1. Gunshot Wound to Left Leg

Plaintiff sustained a gunshot wound in 2006, resulting in injury to the left popliteal fossa and transection of the popliteal artery. *See, e.g.,* A.R. 315-16. Vascular surgery repaired the artery. *See* A.R. 314. A large open wound remained, and plaintiff subsequently underwent debridement of the wound, skin grafts, and treatment for an infection of the wound. *See, e.g.,* A.R. 308-13. On his discharge from Prince George's Hospital Center on November 15, 2006, Konrad L. Dawson, M.D, prescribed an antibiotic and Percocet as needed for pain. A.R. 308.

Plaintiff continued to experience pain in his left leg. On January 22, 2011, plaintiff presented to the emergency room at Howard University Hospital. *See* A.R. 218. He reported

that he had no more medication for pain, A.R. 226, and he was prescribed Percocet, A.R. 219, 222. On March 16, 2011, again at Howard University Hospital, but this time complaining of symptoms not related to the gunshot wound, plaintiff reported to emergency room staff that he had been taking Percocet and oxycontin. A.R. 231, 233-34.

Panos Labropoulos, M.D., an orthopaedic surgeon, examined plaintiff on May 26, 2011. *See* A.R. 245. Plaintiff complained of pain in the left leg radiating to his ankles and toes; he also experienced tingling in the toes. *Id*. X-rays showed that a bullet fragment remained, but showed no evidence of fracture, dislocation, or joint space narrowing. A.R. 251. The neurological "exam [on June 1, 2011] showed some contraction of the left knee, decreased sensation over the lateral part of the foot, [and] no significant muscle weakness"; otherwise the results were normal. A.R. 242.

When plaintiff first established a primary care relationship on December 20, 2011 with Anuj Bhatnagar, M.D., at the George Washington University Hospital, Medical Faculty Associates, he reported pain in his left leg and described his level of pain as "10/10." A.R. 379. He reported that he was taking Percocet and oxycontin for pain. *Id*. He also reported that he smoked five cigarettes per day, smoked marijuana twice per week (and on the day before the appointment with Dr. Bhatnagar), and described himself as a "social drinker." *Id*. Dr. Bhatnagar counseled plaintiff regarding use of oxycodone for pain control and the limitations of an increased dose of this medication. A.R. 380. He noted that plaintiff was "kind of blocking counseling about quitting substance abuse." *Id*. Nevertheless, Dr. Bhatnagar prescribed oxycodone. *Id*. By plaintiff's next visit on January 13, 2012, he had "used up 60 tab[lets of oxycodone] in 20 days." A.R. 377. Dr. Bhatnagar referred plaintiff to the pain clinic. *Id*.

Plaintiff sought treatment in the emergency room of Howard University Hospital on February 10, 2012, again complaining of pain. A.R. 337-38. He was prescribed oxycontin. A.R. 339-40. He reported to Dr. Bhatnagar on February 21 that his then-current dose of oxycontin did not control his "severe limb pain." A.R. 373. Although Dr. Bhatnagar prescribed five oxycodone tablets at that time, he instructed that no more oxycodone be prescribed. A.R. 374. On that same date, plaintiff returned to the emergency room at Howard University Hospital, stating that a pharmacy would not fill his prescription for oxycontin and requesting another medication for pain. A.R. 347, 349.

On March 19, 2012, the date of plaintiff's first appointment at the pain clinic, he was prescribed Neurotonin, Elavil, and a Lidoderm patch. A.R. 352-53. Although plaintiff continued to experience severe pain, on April 12, 2012, Dr. Bhatnagar declined to prescribe more narcotics and instead counseled him about the adverse affects of narcotics. A.R. 370-71. Dr. Bhatnagar's records noted substance abuse, as plaintiff was "running out of his narcotic medication before time." A.R. 371. Plaintiff refused a referral for physical therapy and stated his intention not to return to Dr. Bhatnagar. *Id.*

On April 3, 2012, Dr. Labropoulos completed a Medical Examination Report for the District of Columbia's Income Maintenance Administration for the purpose of determining plaintiff's eligibility for disability benefits. *See* A.R. 393-94. He found that plaintiff experienced no restrictions of activities of daily living, no difficulty in maintaining social function, and no difficulties in maintaining concentration, except that plaintiff could not lift or carry more than 10 pounds. A.R. 394. Further, Dr. Labropoulos found that plaintiff could sit for at least six hours per day and stand and walk for at least two hours per day. *Id.* In his opinion, plaintiff's medical condition did not prevent him from working, as long as plaintiff would not be

required to walk or stand more than four hours per day or lift or carry objects weighing more than 10 pounds. *Id*.

### 2. Blindness in Right Eye

An assault on plaintiff in 2008 ruptured the globe of his right eye resulting in total blindness. *See, e.g.,* A.R. 215. Vision in his left eye was reported as 20/30. *Id*. He experienced pain in the right eye, *see, e.g.,* A.R. 265, for which he had been prescribed Percocet, *see, e.g.,* A.R. 264, 266, 269, 272. Records from plaintiff's visits to Lindsay Smithen, M.D., since 2010 reflected that plaintiff smoked daily, drank as many as 3-4 beers daily, smoked 1-2 marijuana "sticks" daily, and used PCP twice weekly. *See, e.g.,* A.R. 238, 247, 253, 258, 299, 360, 365. Plaintiff also has been prescribed medication to treat irritation and itching of the eyes, A.R. 215, 241, 285, and he received a prosthesis for his right eye, *see, e.g.,* A.R. 238. He has experienced blurred vision and strain of the left eye. A.R. 40.

### 3. Plaintiff's Impairments

The ALJ found, based on objective medical evidence, *see* A.R. 13, that plaintiff "has the following severe impairments: left leg gunshot wound, right eye blindness, and left eye blurriness." A.R. 12. "These impairments," the ALJ concluded, "singly and in combination, cause more than a minimal restriction in [plaintiff's] work-related abilities." *Id*.

## C. Step Three

At Step Three, the SSA again considers the medical severity of a claimant's impairments, and determines whether the impairments meet or equal one of the listings set forth in appendix 1 to subpart P of part 404 of the applicable regulations and meets a duration requirement. *See* 20 C.F.R. § 416.920(a)(4)(iii). If a claimant has an impairment that meets "the duration requirement and is listed in appendix 1 or is equal to a listed impairment[]," he is deemed

"disabled without considering [his] age, education, and work experience." *Id*. § 416.920(d); *see id*. § 416.920(a)(4)(iii).

The ALJ concluded that, "although [plaintiff's] impairments are severe, they are not attended by the specific clinical signs and diagnostic findings necessary to meet the requirements set forth in the Listing of Impairments, Appendix 1 to Subpart P of 20 CFR 404." A.R. 13.

### D.  Step Four

At Step Four, the SSA considers an assessment of a claimant's residual functional capacity and past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv). Residual functional capacity "is the most [a claimant] can still do despite [his] limitations." *Id*. § 416.945(a). "Past relevant work is work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [him] to learn to do it." *Id*. § 416.960(b)(1). If a claimant still can do his past relevant work, he is not disabled. *See id*. § 416.920(a)(4)(iv); *see also id*. §§ 416.920(f), 416.960(b)(3).

Taking into consideration the entire record, "based on all of [plaintiff's] impairments, including the substance use disorder," A.R. 13, and based on "the objective medical evidence, the opinion evidence, and [plaintiff's] subjective allegations," A.R. 14, the ALJ made the following findings with respect to plaintiff's residual functional capacity:

> [T]he claimant has the residual functional capacity to perform light work . . . with the following restrictions: he cannot climb ladders, ropes or scaffolds, be exposed to hazardous heights or hazardous moving machinery, or be exposed to extreme temperature changes due to physical and/or mental limitations.  The claimant retains the ability to occasionally climb stairs and ramps, to balance, to stoop, and to crouch, but does not retain the ability to perform work involving crawling or kneeling.  The claimant requires unskilled routine work due to mental functioning.  He can do no work requiring good binocular vision due to right eye blindness, but he is able to see and function with his left eye.  The claimant experiences occasional pain and fatigue but can still function satisfactorily more than 80% of the time.  The claimant is right hand dominant.  The claimant can have no more than occasional exposure to vibration, humidity, wetness, dust, fumes, chemicals, and poor

ventilation. The claimant must avoid lifting or carrying above shoulder height. The claimant has the ability to walk or stand for a total of four hours per day in an eight-hour day, and to sit for a total of six hours per day in an eight-hour day. The claimant requires the option to alternate between sitting and standing such that not more than one-half hour is required to either sit or stand at any one time. The claimant, when his substance abuse is considered, has frequent interruptions as to performing activities within a schedule and maintaining regular attendance for reliability purposes, and being punctual within customary tolerances, and as to completing a normal work day or work week without an unreasonable length and number of rest periods that result in the claimant not being able to function more than 80% of the time.

A.R. 13-14 (footnote omitted). The ALJ gave little weight to the opinions of "State agency medical consultants" who found that plaintiff could "perform light work with occasional climbing, balancing, kneeling, crouching, and crawling" because he deemed these opinions "inconsistent with [plaintiff's] credible allegations of poor sleep, daytime tiredness, and left eye blurriness when he is using drugs and alcohol." A.R. 14. And based on the vocational expert's testimony, *see* A.R. at 46-50, the ALJ concluded that an individual with plaintiff's residual functional capacity could perform light unskilled work, but could not perform plaintiff's "past medium semiskilled work as a maintenance janitor," A.R. 14.

### E.  Step Five

At Step Five, the SSA considers a claimant's residual functional capacity, age, education, and work experience to determine whether he can adjust to other work. *See* 20 C.F.R. § 416.920(a)(4)(v); *see id.* § 416.960(c)(1). If a claimant can make an adjustment to other work, he is not disabled; conversely, if he cannot make an adjustment to other work, he is deemed disabled. *See id.* § 416.920(a)(4)(v); *see also id.* § 416.920(g).

Plaintiff, who was 37 years old when he applied for benefits, falls in the category of "younger person." *Id.* § 416.963(c). His eleventh grade education, A.R. 29, is limited, 20 C.F.R. § 416.964(b)(3), and he is able to communicate in English, *id.* § 416.964(b)(5). The skills he had acquired, according to the vocational expert, "do not transfer to any occupation within

[plaintiff's] residual functional capacity." A.R. 15. The ALJ concluded that, "[c]onsidering [plaintiff's] age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorder, there are no jobs that exist in significant numbers in the national economy that [plaintiff] can perform." *Id*. Ordinarily in these circumstances, a finding of "disabled" would be appropriate. *Id*. However, because plaintiff "is under a disability and there is medical evidence of a substance use disorder, there is an additional issue as to whether the substance use disorder is a contributing factor material to the determination of disability." A.R. 10.

The ALJ found that, even if plaintiff were to stop the substance use, his "remaining limitations would cause more than a minimal impact on [his] ability to perform basic work activities," such that he "would continue to have a severe impairment or combination of impairments." A.R. 15. His impairments still would not meet or medically equal any of the impairments in the List of Impairments, however. *Id*. And if plaintiff "stopped the substance use, [he] would have the residual functional capacity to perform light and alternatively sedentary work," albeit with restrictions. A.R. 16. The ALJ came to this conclusion based on objective medical evidence, as well as opinion evidence regarding plaintiff's symptoms.[2] *Id*.

---

[2] "Symptoms" are a claimant's "own description of [his] physical or mental impairment." 20 C.F.R. § 416.928(a). The ALJ must "consider all of [a claimant's] statements about [his] symptoms, such as pain, and any description [the claimant and treating physicians, among others] may provide about how the symptoms affect [his] activities of daily living and [his] ability to work[.]" *Id*. § 416.929(a). Statements regarding a claimant's pain alone do not establish that a claimant is disabled. *See id*. Rather, "there must be medical signs and laboratory findings which show that [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of . . . pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled." *Id*. "Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. § 416.929(b). In addition, the ALJ "evaluate[s] the intensity and persistence of [the claimant's] symptoms" in order to "determine how [the] symptoms limit [the claimant's] capacity for work." *Id*. § 416.929(c)(1).

Plaintiff testified at the hearing, "apparently when not under the influence of his twice daily use of marijuana and PCP," A.R. 17, about total blindness in his right eye, A.R. 39, constant pain and irritation in that eye, *id.*, and blurred vision of the left eye, A.R. 40. He described chronic pain in the left leg, *see, e.g.,* A.R. 37-38, 41, 43, explained that certain medications cause drowsiness, A.R. 43, and when pain medications no longer were prescribed, he instead would "sleep the pain away," A.R. 42. Plaintiff also testified that he continued to drink alcohol, A.R. 30, and to smoke two "sticks" of "[m]arijuana mixed with a little PCP" daily, A.R. 30-31. He described his living arrangement with his diabetic mother, A.R. 33, household chores he performs, A.R. 32-33, and his ability to walk short distances, A.R. 34. Based on these statements and his hearing testimony "that he . . . assists [his mother] as much as possible," that he "prepares simple meals, plays cards, uses computers, uses public transportation, socializes with family members, can pay attention for one hour, and can follow written and oral instructions well," the ALJ concluded that plaintiff has the "ability to perform work-related functions absent substance use." A.R. 17. "If [plaintiff] stopped the substance abuse, [he] would have the residual functional capacity to perform light and alternatively sedentary work . . . with the . . . restrictions" previously noted. A.R. 16.

Without substance abuse, the ALJ stated, plaintiff "would not experience the level of sleep problems, somnolence, and blurred vision to an extent that would prevent him from working." A.R. 17. "If [plaintiff] stopped his twice daily substance use," plaintiff's "medically determinable impairments [still] could reasonably be expected to produce the alleged symptoms," but, the ALJ found, plaintiff's opinion of "the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." *Id.* The ALJ referred to plaintiff's testimony that he "has

used two 'sticks' daily right up to the date of the hearing," and that he "indicated to others that [h]e 'wants no help with his substance abuse problems[.]'" *Id.* Furthermore, "[t]reatment notes beginning in February 2010 show[ed] that [plaintiff] drinks 3-4 bottles of beer per day and uses PCP twice per week," and "by [plaintiff's] own testimony there ha[d] been no 12-month continuous period he has not been involved in substance abuse that has involved both marijuana and PCP." *Id.*

Even if plaintiff stopped the substance use, the ALJ concluded that he still would be unable to perform past relevant work. A.R. 18. However, relying upon the vocational expert's hearing testimony, *see* A.R. 45-52, the ALJ found that, "[i]f plaintiff stopped the substance use, considering [his] age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that [he] could perform." A.R. 18. In short, "[t]he substance use disorder is a contributing factor material to the determination of disability because [plaintiff] would not be disabled if he stopped the substance use." A.R. 19. Accordingly, the ALJ concluded that plaintiff "has not been disabled within the meaning of the Social Security Act at any time from the date the application was filed through the date of [his] decision." *Id.*

Plaintiff's Motion for Judgment of Reversal merely asks this Court to "reconsider the original action that the reversal of judgment of the defendant appeal in favor for the plaintiff," Mot. for J. of Reversal at 1, without identifying any particular error by the ALJ. His opposition to the SSA's motion for judgment of affirmance is no more substantive or persuasive. Although plaintiff forthrightly acknowledges his use of drugs and alcohol, he maintains that this case is "about [his] disability not . . . drugs." Pl.'s Resp. for J. of Affirmance and his Mem. in Opp'n to Def.'s Mot. for J. of Reversal at 2.

In contrast, the record amply supports the SSA's decision. There is substantial evidence in the record that plaintiff is impaired as a result of a gunshot wound, right eye blindness and left eye blurriness, that these impairments prevent plaintiff from engaging in his past work activity, and that a person with plaintiff's residual functional capacity cannot adjust to other work. However, there is also substantial evidence to support the ALJ's determination that plaintiff's substance abuse is a contributing factor to the disability determination. Based on plaintiff's hearing testimony and objective medical evidence in the record, the ALJ had ample support for his conclusion that, if plaintiff refrained from alcohol, marijuana, and PCP use, he would have residual functional capacity to perform light and alternatively sedentary work, albeit with several restrictions.

Based on careful review of the entire record of this case, the Court concludes that there is substantial evidence to support the ALJ's determination. In light of his substance abuse, plaintiff is not disabled under the governing regulations, and therefore is not entitled to SSI benefits. Defendant's Motion for Judgment of Affirmance will be granted. An Order accompanies this Memorandum Opinion.


DATE:  September 29, 2015                    /s/
                                                      JOHN D. BATES
                                                      United States District Judge